## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC V. BARTOLI, | ) | CASE NOS.:  5:03-cr-00387 |
| | ) | 5:19-cv-01841 |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| UNITED STATES OF AMERICA, | ) | **ORDER** |
| | ) | (Resolves Docs. 74, 98, 127, and 128 for |
| Respondent. | ) | 5:03-cr-0387) |

This matter is before the Court on Petitioner Eric V. Bartoli's ("Bartoli") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Mot. to Vacate, ECF No. 74.)[1] For the reasons discussed, detailed, and analyzed herein Bartoli's motion is granted in part and denied in part.

## I.  BACKGROUND

Between 1995 and 1999, Bartoli executed an investment scheme where he marketed and sold unregistered securities to hundreds of investors around the world. (Plea Agreement 17-25, ECF No. 34.) Investors' funds were not actually invested, however, but rather diverted to other investment schemes or for Bartoli's and his coconspirators' personal use. (*Id.*) The scheme resulted in Bartoli and his coconspirators obtaining approximately $64.7 million from investors, while only about $30.6 million was returned to investors in the form of redemptions. (*Id.*) Bartoli also filed false and fraudulent income tax return forms grossly understating his taxable income for the 1996 and 1997 tax years and completely failed to file income tax return forms for the 1998 tax year. (*Id.* at 25-26.) In 1999, after the SEC enjoined Bartoli and his coconspirators from operating the

---

[1] All citations in this Memorandum of Opinion and Order are to the docket for *United States of America v. Bartoli*, Case No. 5:03-cr-00387, N.D. Ohio.

scheme and a receiver was appointed to recover investors' funds, Bartoli abandoned his Ohio residence. (*Id.* at 26.) Around November 1, 2000, Bartoli left the United States. (*Id.*)

On October 15, 2003, a federal Grand Jury indicted Bartoli for the following: Count 1 – Conspiracy to Commit an Offense in violation of 18 U.S.C. § 371 (hereinafter "Conspiracy Charge"); Count 2 – Securities Fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), and 17 C.F.R. § 240.10b-5 (hereinafter "Securities Fraud Charge"); Count 3 – Sale of Unregistered Securities in violation of 15 U.S.C. §§ 77e(a) and 77x (hereinafter "Sale of Unregistered Securities Charge"); Count 4 – Wire Fraud in violation of 18 U.S.C. § 1343 (hereinafter "Wire Fraud Charge"); Count 5 – Mail Fraud in violation of 18 U.S.C. § 1341 ("Mail Fraud Charge"); Count 6 – Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (hereinafter "First Money Laundering Charge"); Count 7 – Money Laundering in violation of 18 U.S.C. § 1957 (hereinafter "Second Money Laundering Charge"); and Counts 8-10 – Attempted Income Tax Evasion in violation of 26 U.S.C. § 7201 (hereinafter, collectively, "Attempted Income Tax Evasion Charges"). (Indictment 1-54, ECF No. 2.) Bartoli was indicted for conduct that occurred between 1995 and August 27, 1999. (*Id.*)

Thereafter, beginning in approximately 2006, Bartoli, while residing in Peru, used aliases such as "Enrico B. Orlandini," "Giuseppe Luigi Borrelli," "Steve Betts," and "Roger Williams" to represent himself as an investment advisor and operator of multiple financial services firms and investment newsletters. (Plea Agreement 26-27, ECF No. 34.) Bartoli ultimately convinced individuals to invest in the funds he claimed to manage. (*Id.*) However, Bartoli never invested the money he was given and instead used it all to enrich himself. (*Id.* at 26-28.) Bartoli defrauded individuals of approximately $5,588,000 in this scheme. (*Id.* at 28.)

On December 11, 2013, Bartoli was arrested by the Peruvian National Police on a warrant related to the indictment in this matter. (*Id.* at 26. *See also* Tr. Sentencing Hr'g 36:19-39:21, ECF No. 56.) At the end of October 2015, Bartoli was arrested by the Federal Bureau of Investigation and extradited to the United States. (Plea Agreement 26, ECF No. 34. *See also* Docket Entry 10/29/2015; Arrest Warrant, ECF No. 30.)

On October 29, 2015, Bartoli appeared before this Court for arraignment where he pled not guilty to the charges against him and was remanded into custody. (Min. 10/29/2015. *See also* Tr. Arraignment Hr'g 3:10-7:21, ECF No. 65.) On July 13, 2016, Bartoli and the government entered into a written plea agreement and attended a change of plea hearing before this Court. (Plea Agreement, ECF No. 34; Min. 7/13/2016. *See also* Tr. Change of Plea Hr'g 2:1-22, ECF No. 53.)

Throughout the change of plea hearing, Bartoli was under oath and not under the influence of any substance that would affect his ability to understand the hearing. (Tr. Change of Plea Hr'g 3:7-21, 4:6-13, ECF No. 53.) At the outset, Bartoli affirmed he fully reviewed the indictment and understood the charges it contained, he had adequate time to discuss and review all the matters related to his case, including possible defenses, with his attorneys, and he was satisfied with his attorneys' performances. (*Id.* at 4:14-5:6, 39:6-15.) Bartoli also affirmed, with respect to the written plea agreement, he had fully read and reviewed it, he understood its terms, and no one had made any promises or threats which persuaded him to sign it. (*Id.* at 5:23-6:16, 7:6-9, 39:6-15, 45:20-22.)

Thereafter, this Court engaged in a lengthy plea colloquy with Bartoli during which the written plea agreement was reviewed paragraph by paragraph – this necessarily included detailing the consequences of pleading guilty and the offenses, along with their associated legal elements, to which Bartoli wished to plead guilty. (*Id.* at 2:23-3:6, 7:10-44:10. *See also* Plea Agreement 1-15,

ECF No. 34.) Of note, while detailing the consequences of pleading guilty, this Court, in accordance with the information contained in the written plea agreement, provided that Count 2, the Securities Fraud Charge, Count 4, the Wire Fraud Charge, and Count 5, the Mail Fraud Charge, each carried a twenty-year statutory maximum term of imprisonment. (Tr. Change of Plea Hr'g 8:16-17, 9:6-7, 9:16-18, ECF No. 53. *See also* Plea Agreement 2-3, ECF No. 34.)

When this Court sought to determine the factual basis for Bartoli's guilty plea, Bartoli admitted, under oath, that the factual basis contained in the written plea agreement – labeled "Attachment A" – was accurate and truthful. (Tr. Change of Plea Hr'g 44:11-45:7, ECF No. 53.) More specifically, Bartoli affirmed he carefully and thoroughly reviewed the factual materials supporting the government's case against him, he understood the factual recitation, and he admitted to engaging in the illegal activity as written. (*Id.*)

Throughout the change of plea hearing, Bartoli consistently and coherently agreed, under oath, that he wished to waive his rights and plead guilty to the Conspiracy Charge, the Securities Fraud Charge, the Sale of Unregistered Securities Charge, the Wire Fraud Charge, the Mail Fraud Charge, and the Attempted Income Tax Charges against him. (*Id.* at 5:7-22, 12:24-13:11, 40:10-17, 41:9-44:10.) Therefore, after the lengthy and thorough exchange between Bartoli and this Court, Bartoli entered his guilty plea and this Court accepted it with a finding that Bartoli was competent and entered an informed, knowing, and voluntary plea. (*Id.* at 46:6-23.) Likewise, Bartoli's written plea agreement, signed by both Bartoli and this Court, was finalized. (Plea Agreement 16, ECF No. 34.)

On November 9, 2016, Bartoli attended his sentencing hearing where this Court sentenced Bartoli to the custody of the United States Bureau of Prisons for five years each as to Count 1, the Conspiracy Charge, Count 3, the Sale of Unregistered Securities Charge, and Counts 8-10, the

Attempted Income Tax Evasion Charges, and to twenty years each as to Count 2, the Securities Fraud Charge, Count 4, the Wire Fraud Charge, and Count 5, the Mail Fraud Charge, with all sentences to run concurrently, and ordered Bartoli to pay $42,499,302.82 in restitution. (Min. 11/09/2016; Tr. Sentencing Hr'g 3:3-19, 55:20-61:3, ECF No. 56; J. 1-8, ECF No. 44.) Counts 6 and 7, the First Money Laundering Charge and the Second Money Laundering Charge, were dismissed upon the government's motion. (Min. 11/09/2016; Tr. Sentencing Hr'g 60:22-25, ECF No. 56; J. 1, ECF No. 44.) This Court's sentence was affirmed on appeal. *United States v. Bartoli*, 728 F. App'x 424 (6th Cir. 2018). Bartoli's request for rehearing en banc was denied as was his petition for certiorari to the Supreme Court of the United States. *United States v. Bartoli*, No. 16-4748, 2018 U.S. App. LEXIS 13250, at *1 (6th Cir. May 21, 2018); *United States v. Bartoli*, 139 S. Ct. 1463 (2019) (table decision).

On August 13, 2019, Bartoli filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Mot. to Vacate, ECF No. 74.) Bartoli's Motion to Vacate sets forth five grounds for relief: (1) ineffective assistance of counsel for failing to identify Ex Post Facto Clause violations; (2) ineffective assistance of counsel for failing to assert Bartoli's Sixth Amendment right to a speedy trial was violated; (3) ineffective assistance of counsel for failing to argue Bartoli's extradition was illegal; (4) ineffective assistance of counsel during Bartoli's sentencing; and (5) "constitutional questions" regarding prosecutorial misconduct and the application of the Ex Post Facto Clause to extradition treaties. (*Id.* at 4-9. *See also* Mem. in Supp. of Mot. to Vacate, ECF No. 74-3.)

In response, the government filed a Response in Partial Concession, conceding that Bartoli must be resentenced due to Ex Post Facto Clause violations that occurred at Bartoli's sentencing. (Resp't's Resp. in Partial Concession 1, 3-6, ECF No. 84.) Accordingly, this Court vacated

Bartoli's sentence and ordered Bartoli's transfer back to the Northern District of Ohio for appointment of counsel. (Order, ECF No. 91.)

Bartoli was subsequently appointed counsel who was awarded time to thoroughly review Bartoli's case and supplement the arguments in Bartoli's original Motion to Vacate. (*See* Docket Entry 04/01/2020; Tr. Apr. 8, 2020 Status Conference, ECF No. 107; Tr. Jun. 9, 2020 Status Conference, ECF No. 122.) Bartoli then filed a Supplemental Memorandum in Support of the Motion to Vacate, which reiterated the five grounds for relief requested in his original Motion to Vacate. (Pet'r's Suppl. Mem., ECF No. 113.) The government filed a Response in Opposition to Petitioner's Motion to Vacate, to which Bartoli filed a Reply and a Supplemental Memorandum to the Reply. (Resp. in Opp'n to Mot. to Vacate, ECF No. 123; Pet'r's Reply, ECF No. 124; Pet'r's Suppl. to Reply, ECF No. 126.) This Court has thoroughly reviewed all arguments before it.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner "may move the court which imposed the sentence [against him] to vacate, set aside, or correct the sentence." 28 U.S.C.S. § 2255(a). In order for the prisoner to obtain relief under 28 U.S.C. § 2255, he "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (internal quotation marks omitted)).

In the instant matter, as stated previously, Bartoli provided five grounds for relief in his Motion to Vacate pursuant to 28 U.S.C. § 2255. The first four grounds indicate that Bartoli is alleging an error of constitutional magnitude in the form of ineffective assistance of counsel. (Mot. to Vacate 1-9, ECF No. 74.) The fifth ground poses "constitutional questions." (*Id.* at 9.)

III.  **ANALYSIS**

This Court will address each of Bartoli's grounds for relief in chronological order from when he alleges the error occurred.

### A.  Ground Five – Prosecutorial Misconduct

Ground five of Bartoli's Motion to Vacate poses two "constitutional questions." (Mot. to Vacate 9, ECF No. 74.) The first, "[w]as there prosecutorial misconduct regarding the application of charges against [Bartoli]." (*Id.*) The second, "[c]an Congress make a law containing Ex Post Facto Clause to be applied to the detriment of [Bartoli] as it did in the Treaty used to extradite [Bartoli]." (*Id.*)

With respect to the first question, Bartoli claims his counsel was ineffective for failing to recognize prosecutorial misconduct when Bartoli was indicted and extradited. (Mem. in Supp. of Mot. to Vacate 19, ECF No. 74-3; Pet'r's Suppl. Mem. 18, ECF No. 113.) Specifically, Bartoli claims that the indictment contained an Ex Post Facto Clause violation with respect to Count 2, the Securities Fraud Charge, when it recited the incorrect statutory maximum sentence, indicative of prosecutorial misconduct. (Mem. in Supp. of Mot. to Vacate 19-20, ECF No. 74-3; Pet'r's Suppl. Mem. 18, ECF No. 113.) Bartoli further alleges that the indictment, with respect to Count 4, the Wire Fraud Charge, and Count 5, the Mail Fraud Charge, was modified at least three times, flipping between reciting the incorrect statutory maximum sentence for those charges – which violated the Ex Post Facto Clause – and the correct statutory maximum sentence for those charges for the sole purpose of denying Bartoli his legal rights. (Mem. in Supp. of Mot. to Vacate 19-20, ECF No. 74-3; Pet'r's Suppl. Mem. 18-21, ECF No. 113.) Bartoli argues that this blatant and apparent misconduct raises the question of whether the charges against him are constitutionally

sound. (Mem. in Supp. of Mot. to Vacate 19-21, ECF No. 74-3; Pet'r's Suppl. Mem. 18-21, ECF No. 113.)

Bartoli's arguments focus solely on the indictment and its effect on his extradition. As a threshold matter, "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). With respect to prosecutorial misconduct as it relates to an indictment, the Sixth Circuit Court of Appeals has made clear that "a court may not order dismissal of an indictment under its supervisory power unless the defendant demonstrates that 'prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in the district'" and "a defendant who seeks dismissal of an indictment also must show that he was prejudiced by the prosecutor's actions." *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir. 1985) (quoting *United States v. Nembhard*, 676 F.2d 193, 200 (6th Cir. 1982)). *See also Bank of N.S. v. United States*, 487 U.S. 250, 255 (1988) (explaining a district court "exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant"). Going further, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of N.S.*, 487 U.S. at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)).

To be clear, Bartoli's arguments first suggest that the indictment itself was constitutionally invalid due to prosecutorial misconduct because it misstated the statutory maximum sentence for certain charges. However, the indictment does not recite statutory maximum sentences for any of the charges. (Indictment 1-54, ECF No. 2.) Although the criminal designation form attached to the indictment does state that Count 2, the Securities Fraud Charge, carries a twenty-year statutory

maximum sentence, this form is not part of the indictment. (Criminal Designation Form 1, ECF No. 2-1.) Pursuant to the Northern District of Ohio Local Criminal Rules, "[t]he United States Attorney shall file a criminal designation form *with each new indictment . . .*" LCrR 55.1 (*emphasis added*). As the local rule states, the criminal designation form is filed with the indictment, which necessarily indicates that it is completed once a grand jury indicts. Certainly, this form cannot be completed until the charges for which the grand jury indicted are known. Therefore, this is not information presented to the grand jury or even part of the indictment.

There is no need for this Court to engage in an analysis regarding whether misstatements contained in an indictment rise to the level of prosecutorial misconduct because the indictment in this matter did not contain misstatements. For clarity, even if Bartoli properly argued and adequately demonstrated long-standing problems in grand jury proceedings in this district – which he clearly has not – he absolutely cannot demonstrate prejudice because the misstatements he alleges were not in the indictment, not presented to the grand jury and, therefore, could not have influenced the decision to indict. Any argument Bartoli advances regarding prosecutorial misconduct due to misstatements of statutory consequences in the indictment is, therefore, meritless. The indictment is valid on its face and shall not be dismissed.

Finally, Bartoli's allegations of constantly changing recitations of statutory maximum sentences and multiple edits to the indictment to elicit his extradition and deprive him of his rights are wholly unfounded. There is zero evidence of any changes to the indictment. The original indictment and criminal designation form, both dated October 15, 2003 and filed the same day, remain the only indictment and criminal designation form in the record for this case. Furthermore, the document Bartoli provided, allegedly from the United States government to Peru when requesting Bartoli's extradition, purporting to demonstrate prosecutorial misconduct states "please

note that Title 18 United States Code, Section 1343, and Title 18 United States Code, Section 1341 were amended in 2002. The text of the statutes included in Exhibit A of the extradition documents is the current, amended version of these statutes. Below, please find the text of these statutes as they were at the time Bartoli's alleged criminal conduct and as will be applicable in his prosecution." (Mem. in Supp. of Mot. to Vacate Ex. 4 at 48, ECF No. 74-4). Correcting a statutory submission is not prosecutorial misconduct. Still, Bartoli has failed to demonstrate how the submission of the proper statutes to Peru prejudiced him during his extradition. In fact, the Supreme Court of Peru, in its extradition opinion for Bartoli, did not mention the statutory maximum sentences Bartoli faced in the United States whatsoever, indicative that any punishment Bartoli faced in the United States had no bearing on the decision to extradite him. (Translated Supreme Court of Peru Extradition Op. 1-6, ECF No. 125-1.)

For all these reasons, this Court finds no prosecutorial misconduct occurred as alleged. Accordingly, this Court will not engage in further analysis regarding the constitutional efficacy of Bartoli's counsel for failing to raise a prosecutorial misconduct argument because a failure to raise "wholly meritless claims cannot be ineffective assistance of counsel." *United States v. Martin*, 45 F. App'x 378, 381-82 (6th Cir. 2002). In conclusion, the indictment, valid on its face and constitutionally sound, shall not be dismissed and Bartoli's extradition shall not be reversed. This first portion of Bartoli's fifth ground for relief in his Motion to Vacate is therefore denied. The second argument of Bartoli's fifth ground for relief will be addressed *infra*.

### B.  Ground Two – Violations of Sixth Amendment Speedy Trial Rights

In the second ground of his Motion to Vacate, Bartoli claims that his counsel was ineffective for failing to "recognize and object to a violation of [Bartoli's] [sic] Amendment Right to a 'Speedy Trial.'" (Mot. to Vacate 5, ECF No. 74.) Bartoli argues that the twelve-year delay between

indictment, which occurred October 15, 2003, and arraignment, held October 29, 2015, violated his Sixth Amendment right to a speedy trial. (*Id.*)

The Sixth Amendment of the United States Constitution guarantees for ". . . all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. When determining whether a violation of the Sixth Amendment has occurred, this Court must consider "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). No one factor alone establishes a Sixth Amendment violation, "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

1. *Length of Delay*

The first factor, length of delay, is the threshold issue as the interval between accusation and trial must cross the line from ordinary delay to "presumptively prejudicial" delay to trigger analysis of the remaining factors. *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007) (quoting *Doggett*, 505 U.S. at 651-52) (internal quotation marks omitted)). *See also United States v. Mundt*, 29 F.3d 233, 235 (6th Cir. 1994). "A delay approaching one year is presumptively prejudicial." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citing *Doggett*, 505 U.S. at 652, n.1). Because the delay in this matter, between indictment and Bartoli's first appearance before this Court, was twelve years, it is presumptively prejudicial triggering analysis of the remaining factors.

2. *Reason for the Delay*

The second factor, considering the reasons for the delay, while not dispositive remains "[t]he flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). When balancing the reasons, "[g]overnmental delays motivated by bath faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government." *Robinson*, 455 F.3d at 607 (citing *Barker*, 407 U.S. at 531). Since "the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pre-trial delay." *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999) (quoting *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997) (internal quotation marks omitted)).

As with other litigants, this factor is the flag Bartoli seeks to capture. In fact, Bartoli concludes that responsibility for delay in this case falls squarely on the shoulders of the government as he paints himself innocent of any fault by asserting that he was simply a law-abiding citizen who merely wished to live in Peru and did so with a paper trail leading directly to his front door, which the government failed to knock upon. (Mem. in Supp. of Mot. to Vacate 5-7, ECF No. 74-3; Pet'r's Suppl. Mem. 6-9, ECF No. 113.)

In support of this characterization, Bartoli first claims he left the United States in October 2000 with a valid passport. (Mem. in Supp. of Mot. to Vacate 6, ECF No. 74-3; Pet'r's Suppl. Mem. 7, ECF No. 113.) He denies fleeing. However, court documents reflect that Bartoli was ordered to surrender his passport to the United States District Court for the Southern District of Florida in 1999, which he refused to do until September 21, 2000, when he exchanged his passport for release from a New Hampshire jail. (*See* Resp. to Sentencing Mem. Ex. 1, ECF No. 41-1; Resp. to

Sentencing Mem. Ex. 2, ECF No. 41-2.) Bartoli fails to provide any argument or evidence explaining how he was able to apply for, receive, and use a passport at the same time court documents reflect his passport was in possession of the federal courts.

Even providing Bartoli the widest latitude in assuming that he departed the United States with a valid passport, Bartoli admits to travelling in Europe before settling in Peru in 2001. (*See* Sentencing Mem. 6-7, ECF No. 40.) Bartoli argues that his passport was never flagged by the government – indicative of their negligence. (Mem. in Supp. of Mot. to Vacate 6, ECF No. 74-3; Pet'r's Suppl. Mem. 8, ECF No. 113.) However, there is no evidence Bartoli travelled internationally after 2001. (Pet'r's Reply 15, ECF No. 124 (stating that Bartoli returned to Peru in 2001 where he remained until arrested in 2013).) Bartoli's indictment and arrest warrant were not issued until 2003 – flagging his allegedly valid passport in 2003 would not have provided the government notice of Bartoli's whereabouts since he did not travel internationally after indicted.

Next, Bartoli claims he registered his home address with the United States Embassy in 2001 and received an FBI background check in 2002 – Bartoli argues both activities alerted the government of his location in Peru. (Mem. in Supp. of Mot. to Vacate 6, ECF No. 74-3; Pet'r's Suppl. Mem. 7, ECF No. 113.) In support of these arguments, Bartoli provides grainy, illegible copies of two documents. The first is a printout from a website, in Spanish, and, quite clearly, is not from the United States Embassy. (Mem. in Supp. of Mot. to Vacate Ex. 5 at 6, ECF No. 74-5.) What this Court finds especially problematic with respect to this document is that in one instance Bartoli argues it demonstrates registration of his address with the United States Embassy in 2001, and in another instance claims it was "generated by the U.S. Embassy in Peru on November 17, 2009." (Mem. in Supp. of Mot. to Vacate 6, ECF No. 74-3; Pet'r's Reply 16, ECF No. 124.) Despite these shifting facts, this website printout does not evidence knowledge by the United States

government of Bartoli's whereabouts, neither in 2001 nor in 2009. The second document is wholly illegible except for a stamp that reads "No Arrest Record" as of October 2, 2002. (Mem. in Supp. of Mot. to Vacate Ex. 5 at 22-24, ECF No. 74-5.) This Court finds Bartoli's attempts to proffer these records as evidence that the United States government obviously knew his whereabouts disingenuous at best, if for no other reason than these alleged activities occurred well before Bartoli was indicted.[2]

Finally, Bartoli claims that maintenance of bank accounts, credit cards, and a mortgage – none of which are public records – allowed for him to easily be located. (Mem. in Supp. of Mot. to Vacate 6, ECF No. 74-3; Pet'r's Suppl. Mem. 8, ECF No. 113.) Even Bartoli's arguments that public records, such as a driver's license, passport, and land deed, pointed to his exact location fail because the government first needed to know where in the world to begin looking before public records examinations could be fruitful. (Mem. in Supp. of Mot. to Vacate 6, ECF No. 74-3; Pet'r's Suppl. Mem. 8, ECF No. 113.) Bartoli colors the government's failure to locate him as negligent at the very least, arguing the government failed to notify him of the indictment, failed to notify this Court of any difficulties locating him, and failed to seek his arrest prior to 2010 despite him living openly in Peru. (Mem. in Supp. of Mot. to Vacate 5-7, ECF No. 74-3; Pet'r's Suppl. Mem. 7-9, ECF No. 113.)

The record, however, reflects that Bartoli evaded arrest and detection, and it was his actions alone that caused the delay of this matter. If nothing else, Bartoli's use of aliases is damning. If Bartoli was truly unaware of the indictment against him, as he so strenuously argues, why bother

---

[2] This Court will note that the criminal designation form attached to the indictment recites Bartoli's address as Marshallville, Ohio. (Criminal Designation Form 2, ECF No. 2-1.) Given the requirement of the Northern District of Ohio Local Criminal Rules directing "the United States Attorney shall indicate the name and address of the defendant . . .," the government certainly would have indicated Bartoli's address in Peru had it known at the time of indictment in 2003. LCrR 55.1.

utilizing multiple aliases while executing an investment scheme in Peru with notably similar characteristics as the scheme for which he was indicted in the United States. Bartoli addresses this only once, claiming his aliases were actually "pen names under which [he] wrote various investment articles." (Pet'r's Reply 16, ECF No. 124.) However, this statement, along with Bartoli's persistent assertions he was unaware of the charges pending against him in the United States, fly directly into the face of Bartoli's admission, under oath, that he "used false names to conceal from his investors the fact that he was a fugitive wanted in the United States on multiple counts of fraud related to investment schemes in the Northern District of Ohio." (Plea Agreement 27, ECF No. 34; Tr. Change of Plea Hr'g 44:11-45:7, ECF No. 53.) In addition, and possibly most damning, one of these "pen names" was reflected on identification Bartoli provided to the Peruvian National Police. Bartoli admitted, under oath, that upon arrest by the Peruvian National Police he falsely represented himself to be a native-born Argentine citizen named Giuseppe Borelli and provided personal identification claiming the same. (Plea Agreement 26, ECF No. 34; Tr. Change of Plea Hr'g 44:11-45:7, ECF No. 53.) These are not the activities of a law-abiding citizen merely going about his personal business and living openly. These are the activities of an individual attempting to avoid detection.

When this Court pressed the government to explain the lengthy delay in this matter, the government responded that until Bartoli committed the investment scheme in Peru, he had gone undetected. (Tr. Sentencing Hr'g 39:22-40:10, ECF No. 56.) Once Bartoli's whereabouts were known, as a result of the investment scheme he executed in Peru, the government "immediately began the process to arrest and extricate him back to the United States." (*Id.*) The totality of the evidence before this Court suggests Bartoli in Peru was much like a misplaced cell phone – the cell phone itself knows where it is but cannot be located, despite being searched for, until it rings.

*Cf. Doggett*, 505 U.S. at 648-53 (finding the government negligent where a defendant fled the country before the indictment, but re-entered the United States unencumbered due to a clerical error and lived openly in the United States for six years); *United States v. Heshelman*, 521 F. App'x 501, 506-07 (6th Cir. 2013) (finding the delay was due to intentional, impermissible government conduct that used a "wait-and-see" strategy rather than "pursuing the available options to retrieve [the defendant] from Switzerland . . . because it wanted to have complete control over the charges that could be tried"); *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008) (finding the government negligent because although defendant went to the Philippines before being indicted, the government spoke with him directly while he was in the Philippines, failed to inform him of the indictment, and waited to arrest him until he returned to the United States).

This Court finds that the government adequately demonstrated Bartoli alone was the cause of the delay. In fact, the record fails to demonstrate bad faith or even negligence on the part of the government in attempting to locate Bartoli. Accordingly, this factor weighs heavily in favor of the government.

### 3. *Bartoli's Assertion of His Right*

The third factor, analyzing Bartoli's assertion of his right to a speedy trial, first "requires proof by the government that the defendant had knowledge of the federal charges" against him. *Robinson*, 455 F.3d at 608 (citing *Brown* 169 F.3d at 350). It weighs heavily against a defendant when it is demonstrated that the defendant knew of the charges against him but failed to timely assert his right to a speedy trial. *Robinson*, 455 F.3d at 608 (citing *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003)). There is certainly circumstantial evidence suggesting Bartoli knew of the indictment against him while executing the investment scheme in Peru, and again when he

was arrested in Peru in 2013. Certainly, Bartoli was aware when he was arraigned by this Court in 2015. Yet, Bartoli did not assert his speedy trial right until 2019 through his Motion to Vacate.

However, because Bartoli is claiming that his counsel was ineffective for failing to put forth this argument – and by extension suggesting that this argument would have been timely raised had his counsel been effective – in the interest of justice, this Court will not weigh this factor either against or in favor of Bartoli.

    4. *Prejudice to Bartoli*

The final factor, actual prejudice experienced by delay, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker* 407 U.S. at 532. One of the most important interests, of course, is limiting "the possibility that the defense will be impaired." *Id.* This interest is considered the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Id.* However, "a defendant who evades prosecution is culpable in causing the delay, and the prejudice growing from such delay cannot be weighed in his favor." *Brown*, 169 F.3d at 349.

This Court will presume that some prejudice has occurred given the delay in this matter. Witnesses have likely died, memories fade over time, and it is possible that evidence has become stale. However, but for Bartoli's actions to evade arrest and prosecution, these presumed prejudices would not have occurred. Therefore, this factor is weighed heavily against Bartoli.

Of course, with this speedy trial argument, Bartoli seeks the dismissal of his indictment because "[w]hen a defendant's constitutional right to a speedy trial has been violated, dismissal of the indictment is the only available option even when it allows a defendant who may be guilty of a serious crime to go free." *Id.* at 348 (citing *Barker*, 407 U.S. at 522). Therefore, to be clear, under

the above analysis the first factor weighs in Bartoli's favor; the third factor weighs in neither party's favor in the interest of justice; however, the second and fourth factors weigh heavily against Bartoli and heavily in favor of the government. Given the balancing of these factors and Bartoli's personal responsibility for the delay in this case, this Court concludes Bartoli's speedy trial rights were not violated. Accordingly, this Court will not engage in further analysis regarding the constitutional efficacy of Bartoli's counsel for failing to raise a Sixth Amendment speedy trial argument because a failure to raise "wholly meritless claims cannot be ineffective assistance of counsel." *United States v. Martin*, 45 F. App'x 378, 381-82 (6th Cir. 2002). In conclusion, the indictment shall not be dismissed on the grounds that Bartoli's Sixth Amendment right to a speedy trial was violated. Bartoli's second ground for relief in his Motion to Vacate is therefore denied.

### C.  Ground Three – Illegal Extradition

In the third ground of his Motion to Vacate, Bartoli claims that his counsel was ineffective for failing to "object to [Bartoli's] illegal extradition." (Mot. to Vacate 7, ECF No. 74.) Bartoli specifically argues that his counsel was ineffective for failing to recognize that his extradition from Peru to the United States, pursuant to an extradition treaty between the two nations, was illegal because: (1) the principal of dual criminality was violated; (2) the rule of specialty was violated; (3) the United States failed to provide Peru with the proper evidence to support extradition; and (4) the extradition treaty violated the Ex Post Facto Clause of the United States Constitution. (*Id.*)

As background, on November 14, 2002, Congress ratified the Extradition Treaty between the United States of America and the Republic of Peru ("Treaty"), signed in Lima on July 26, 2001. 148 CONG. REC. S11057 (daily ed. Nov. 14, 2002). In pertinent part, the Treaty provides that it serves to recall and replace the previous extradition treaty between the United States and Peru as well as an associated agreement signed in 1899 and 1990, respectively. EXTRADITION TREATY

BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF PERU, U.S.-Peru, July 26, 2001, S. Treaty Doc. No 107-6. The Treaty was in effect at the time the United States requested Bartoli's extradition from Peru. (Translated Supreme Court of Peru Extradition Op. 1, ECF No. 125-1.)

1. *Principal of Dual Criminality*

Bartoli's first argument with respect to his extradition is that the principal of dual criminality, as contained in the Treaty, was violated. (Mot. to Vacate 7, ECF No. 74; Mem. in Supp. of Mot. to Vacate 10-12, ECF No. 74-3.) Throughout this argument, Bartoli refers to miscellaneous sections of the Treaty and various articles of Peru's Criminal Code in an attempt to demonstrate that between 1995 and 1999, when Bartoli committed the indicted offenses, Peru's Criminal Code did not punish those same offenses, thus violating the principal of dual criminality. (Mem. in Supp. of Mot. to Vacate 10-12, ECF No. 74-3.)

Article II of the Treaty describes which offenses are considered extraditable offenses. EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF PERU, art. II, U.S.-Peru, July 26, 2001, S. Treaty Doc. No 107-6. So long as an offense is punishable in both the United States and Peru "by deprivation of liberty for a maximum period of more than one year," regardless of whether the laws are categorized or described differently in each nation, it is an extraditable offense. *Id.* Therefore, Article II of the Treaty enumerates the dual criminality requirement, as it "ensures that the charged conduct is considered criminal and punishable as a felony in both the country requesting the suspect and the country surrendering the suspect." *Ordinola v. Hackman*, 478 F.3d 588, 594 n.7 (4th Cir. 2007) (quoting EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF PERU, art. II, U.S.-Peru, July 26, 2001, S. Treaty Doc. No 107-6). Of note, the offenses in question "need not have identical elements" in each country, but rather must be deemed "substantially analogous" to meet the dual

criminality requirement. *United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir. 1995) (citing *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986); *Peters v. Egnor*, 888 F.2d 713, 719 (10th Cir. 1989); *Brauch v. Raiche*, 618 F.2d 843, 851 (1st Cir. 1980)).

The Supreme Court of Peru analyzed the principal of dual criminality for Bartoli's extradition. (Translated Supreme Court of Peru Extradition Op. 1-4, ECF No. 125-1.) At the outset, the Supreme Court of Peru acknowledged that the charges Bartoli faced in the United States were for conduct occurring between January 1, 1995 and August 27, 1999 and found that Count 1, the Conspiracy Charge, Count 6, the First Money Laundering Charge, and Count 7, the Second Money Laundering Charge, "would be included in the crime of 'Conspiracy to commit a crime,' set forth in Article 317 of the [Peru] Criminal Code punishable with imprisonment of no more than six years." (*Id.* at 1, 3 (footnote omitted).) With respect to Count 2, the Securities Fraud Charge, Count 3, the Sale of Unregistered Securities Charge, Count 4, the Wire Fraud Charge, and Count 5, the Mail Fraud Charge, the Supreme Court of Peru concluded that "the conduct/acts performed by the defendant requested for extradition is included framed in the offense of 'swindle' set forth in Article 196 of the [Peru] Criminal Code, which punishes it with a maximum penalty of six years' imprisonment." (*Id.* at 3-4 (footnote omitted).) Finally, for Counts 8-10, the Attempted Income Tax Evasion Charges, the Supreme Court of Peru concluded that Bartoli's "acts would be included in the [Peru] Criminal Tax Law under Tax Defrauding set forth in aggravating circumstances under subsection a) of article four of Legislative Decree No. 813, punishable with a maximum of 12 years' imprisonment." (*Id.* at 4 (footnote omitted).)

This analysis by the Supreme Court of Peru, conducted for the specific purpose of determining whether Bartoli should be extradited to the United States, clearly determined that the principal of dual criminality was met. The Supreme Court of Peru reviewed the dates of Bartoli's crimes, the

charges he faced in the United States, and directly compared these charges with Peru's Criminal Code. More specifically, the Supreme Court of Peru ensured that the conduct, as charged in the United States, was criminal and punishable in Peru by a term of imprisonment of more than one year – thereby finding the offenses were extraditable and the principal of dual criminality was met. As a final note, "in mulling dual criminality concerns, courts are duty bound to defer to a surrendering sovereign's reasonable determination that the offense in question is extraditable." *Saccoccia*, 58 F.3d at 766 (citing *Casey v. Dep't of State*, 980 F.2d 1472, 1477 (D.C. Cir. 1992); *United States v. Van Cauwenberghe*, 827 F.2d 424, 429 (9th Cir. 1987)). *See also United States v. Campbell*, 300 F.3d 202, 209 (2d Cir. 2002) ("our courts cannot second-guess another country's grant of extradition to the United States"). This Court sees no reason to, and will in no way, supplant the judgment of the Supreme Court of Peru. The principal of dual criminality was not violated during Bartoli's extradition.

2. *Principal of Specialty*

Bartoli's next argument with respect to his extradition is that the rule of specialty, as contained in the Treaty, was violated. (Mot. to Vacate 7, ECF No. 74. Mem. in Supp. of Mot. to Vacate 12-14, ECF No. 74-3.) Article XIII of the Treaty addresses the rule of specialty. EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF PERU, art. XIII, U.S.-Peru, July 26, 2001, S. Treaty Doc. No 107-6. This article provides:

1. A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:
   (a) an offense for which extradition was granted . . .

*Id.* With respect to this rule, "[t]he Supreme Court has recognized for more than a century that it is generally accepted that extradited persons, once returned to the requesting country, may be tried only for those offenses for which extradition was granted by the requested country." *Gon v. Holt*,

774 F.3d 207, 211 (4th Cir. 2014) (citing *United States v. Rauscher*, 119 U.S. 407, 416-17 (1886)). *See also United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 64 n.3 (2d Cir. 1975); *United States v. Puentes*, 50 F.3d 1567, 1572 (11th Cir. 1995) ("a nation that receives a criminal defendant pursuant to an extradition treaty may try the defendant only for those offenses for which the other nation granted extradition").

The Supreme Court of Peru made clear, in its extradition opinion, that the United States sought extradition of Bartoli for the ten counts of the indictment. (Translated Supreme Court of Peru Extradition Op. 2, 6, ECF No. 125-1.) Bartoli was never charged, detained, tried, or punished for any other offense. The matter before this Court is, and always has been, for the ten counts of the indictment. Therefore, quite simply, the rule of specialty has not been broken.

Bartoli, however, voices his displeasure at being ordered to pay restitution, having been sentenced to twenty years' imprisonment, and that relevant conduct was considered at sentencing. (Mem. in Supp. of Mot. to Vacate 12-14, ECF No. 74-3.) What Bartoli fails to understand is that the rule of specialty does not affect what sentence may be imposed or what materials may be considered when imposing said sentence. The rule is only to ensure that an extradited individual does not face additional or different charges than those for which he was extradited. The entirety of Bartoli's case before this Court involved the exact charges for which he was indicted and extradited in compliance with the rule of specialty – his dissatisfaction with his sentence is immaterial to the rule. The rule of specialty was not violated.

3. *Evidentiary Support for Extradition*

Bartoli also advances an argument that the requirements for extradition were not met because the United States failed to provide Peru with proper evidence as required by Article VI of the

Treaty. (Mem. in Supp. of Mot. to Vacate 12, ECF No. 74-3.) Accordingly, Article VI of the Treaty provides:

> 3. A request for extradition of a person who is sought for prosecution shall also be supported by:
> . . .
> (c) such evidence as would be sufficient to justify the committal for trial of the person if the offense had been committed in the Requested State.

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF PERU, art. VI, U.S.-Peru, July 26, 2001, S. Treaty Doc. No 107-6. With respect to this article and its requirements, the Supreme Court of Peru specifically stated in its extradition opinion "[t]he Passive Extradition Request including all legal requirements has been formalized by the judicial authority of the United States of America through a document titled 'Request for Extradition,' attaching all pertinent documentation according to provisions set forth in Article six of the Extradition Treaty . . .." (Translated Supreme Court of Peru Extradition Op. 1, ECF No. 125-1.)

The Supreme Court of Peru then recites that Bartoli faced accusations of defrauding hundreds of investors of millions of dollars by executing a Ponzi scheme between 1995 and 1999. (*Id.* at 1-2.) With respect to evidence against Bartoli, the Supreme Court of Peru specifically stated "[t]he charges filed against him have incriminating grounds by having indicated the description of punishable acts filed against the defendant requested for extradition, as well as the information regarding the dates, places and circumstances of their commission, identification of victims and legal classification corresponding to each punishable act . . . the indictment . . . the arrest warrant . . . and the affidavit in support of the Request for Extradition." (*Id.* at 2-3.) Finally, and perhaps most importantly, the Supreme Court of Peru summarized "the passive extradition package contains the procedural pieces necessary for defining the facts object of the charges and the identity

of the defendant, and it allows one to see the existence of sufficient evidence of a crime based on the procedural punishment system of the requesting state." (*Id.* at 5.)

Therefore, despite Bartoli's protests to the contrary – notably without evidence – the United States did supply Peru with the evidence required by the Treaty. Once again, the Supreme Court of Peru thoroughly reviewed the request for extradition and issued a written opinion reciting its findings that extradition of Bartoli to the United States was proper. This Court will not supplant, and in fact sees no reason to question, the legal conclusions reached by the Supreme Court of Peru.

4. *Effect of Ex Post Facto Clause on Extradition*

A few times throughout his Motion to Vacate Bartoli suggests that the Treaty, as applied to his extradition, violates the Ex Post Facto Clause of the United States Constitution. (Mot. to Vacate 7, 9, ECF No 74; Mem. in Supp. of Mot. to Vacate 20-21, ECF No. 74-3; Pet'r's Suppl. Mem. 21-22, ECF No. 113.) As stated many times before, Bartoli's criminal conduct occurred between 1995 and 1999, while the Treaty was signed in 2001 and ratified by the Senate in 2002. Therefore, although not articulated with particularity, it seems Bartoli is arguing that applying the Treaty to his extradition violates the Ex Post Facto Clause of the United States Constitution because the Treaty went into effect after his criminal conduct occurred.

The Constitution of the United States "prohibits both Federal and State Governments from enacting any ex post facto law." *Peugh v. United States*, 569 U.S. 530, 538 (2013) (citations and internal quotation marks omitted). Specific to the federal government, this clause limits the power of Congress to enact criminal laws – international treaties are not criminal laws. *See Johannessen v. United States*, 225 U.S. 227, 242 (1912) (explaining the Ex Post Facto Clause "is confined to laws respecting criminal punishments, and has no relation to retrospective legislation of any other description"). As the Supreme Court of the United States has explained, "the constitutional

prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990).

Just as treaties are not subject to the restrictions of the Ex Post Facto Clause, neither is extradition. Extradition "is the surrender to another country of one accused of an offence against its laws, there to be tried, and, if found guilty, punished." *Fong Yue Ting v. United States*, 149 U.S. 698, 709 (1893). Extradition, by its nature, is a civil, not criminal, proceeding and is "handled under the civil rules." *DeSilva v. DiLeonardi*, 181 F.3d 865, 868 (7th Cir. 1999). "Extradition proceedings are not in their nature criminal, even if the relator is a criminal; extradition is not punishment for crime, though such punishment may follow extradition . . .." *United States ex rel. Oppenheim v. Hecht*, 16 F.2d 955, 956 (2d Cir. 1927). *See also In re Extradition of McMullen*, 989 F.2d 603, 611 (2d Cir. 1993) ("Although punishment may follow extradition, extradition itself never has been considered punishment."). Because the principles of the Ex Post Facto Clause apply only to criminal matters, and international treaties are extradition are in fact civil constructs, Bartoli's arguments suggesting the Treaty and his extradition violated the Ex Post Facto Clause are meritless.

In sum, Bartoli's extradition was proper following both the principal of dual criminality and the rule of specialty, and the decision of the Supreme Court of Peru to extradite Bartoli shall not be questioned. Furthermore, the application of the Treaty to Bartoli's extradition was not a violation of the Ex Post Facto Clause of the United States Constitution. Accordingly, this Court will not engage in further analysis regarding the constitutional efficacy of Bartoli's counsel for failing to raise arguments that Bartoli's extradition was illegal or unconstitutional because a failure to raise "wholly meritless claims cannot be ineffective assistance of counsel." *United States v. Martin*, 45 F. App'x 378, 381-82 (6th Cir. 2002). Bartoli's request to be returned to Peru is denied

along with the whole of the third ground for relief in his Motion to Vacate and the second portion of his fifth ground for relief.

**D.  Ground One – Ex Post Facto Clause Violations**

The first ground of Bartoli's Motion to Vacate requests relief due to constitutionally ineffective counsel who "failed to identify ex post facto violations permeating every facet of the proceedings . . .." (Pet'r's Suppl. Mem. 1, ECF No. 113. *See also* Mem. in Supp. of Mot. to Vacate 1, ECF No. 74-3; Mot. to Vacate 4, ECF No. 74.) Bartoli claims that the entirety of this matter was tainted from inception because the indictment, petition for extradition, arraignment hearing, change of plea hearing, plea agreement, sentencing hearing, and sentence all either reflected, referred to, or relied upon incorrect statutory maximum terms of imprisonment Bartoli faced, in violation of the Ex Post Facto Clause of the United States Constitution. (Mot. to Vacate 4, ECF No. 74. *See also* Mem. in Supp. of Mot. to Vacate 1-4, ECF No. 74-3; Pet'r's Suppl. Mem. 1-5, ECF No. 113.)

This ground involves the following charges of the indictment: Count 2, the Securities Fraud Charge in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), and 17 C.F.R. § 240.10b-5; Count 4, the Wire Fraud Charge in violation of 18 U.S.C. § 1343; and Count 5, the Mail Fraud Charge in violation of 18 U.S.C. § 1341. Prior to 2002, the Securities Fraud Charge carried a ten-year statutory maximum sentence while the Wire Fraud Charge and Mail Fraud Charge each carried a five-year statutory maximum sentence. *See* Insider Trading and Securities Fraud Enforcement Act of 1988, 100 Pub. L. 704, § 4, 102 Stat. 4677, 4680 (1988) (amending Securities Exchange Act of 1934, 73 Pub. L. 291, § 32, 48 Stat. 881, 904 (1934); Securities Acts Amendments of 1975, 94 Pub. L. 29, § 27, 89 Stat. 97, 163 (1975)); 18 U.S.C. § 1343, 82 Pub. L. 555, § 18, 66 Stat. 722, 722 (1952); 18 U.S.C. § 1341, 80 Pub. L. 772, § 1341, 62 Stat. 683, 763 (1948). In 2002, the Sarbanes-Oxley Act increased the statutory maximum sentence for the Securities Fraud Charge,

the Wire Fraud Charge, and the Mail Fraud Charge to twenty years, each. *See* Sarbanes-Oxley Act of 2002, 107 Pub. L. 204 §§ 903, 1106, 116 Stat. 745, 805, 810 (2002).

The Ex Post Facto Clause of the United States Constitution provides that "[n]o . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. This clause prohibits Congress from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Mo.*, 71 U.S. 277, 325-26 (1867) (internal quotation marks omitted)). It necessarily follows that an Ex Post Facto Clause violation occurs when a criminal law is applied to events that occurred prior to its enactment and the defendant is disadvantaged by such application. *Hill v. Snyder*, 878 F.3d 193, 211 (6th Cir. 2017) (citing *United States v. Kruger*, 838 F.3d 786, 790 (6th Cir. 2016)).

As indicted, Bartoli's criminal conduct occurred between 1995 and 1999. Because Bartoli's criminal conduct concluded prior to enactment of the Sarbanes-Oxley Act, Bartoli faced a ten-year statutory maximum sentence for the Securities Fraud Charge and a five-year statutory maximum sentence each for the Wire Fraud Charge and the Mail Fraud Charge. Bartoli, therefore, argues that Ex Post Fact Clause violations occurred when the statutory maximum sentences prescribed by the Sarbanes-Oxley Act were applied to his criminal conduct, disadvantaging him. (*See* Mot. to Vacate 4, ECF No. 74; Mem. in Supp. of Mot. to Vacate 1-4, ECF No. 74-3; Pet'r's Suppl. Mem. 1-5, ECF No. 113.) Bartoli asks this Court to unwind every thread of this case, find that ineffective assistance of counsel – for failing to recognize said violations of the Ex Post Facto Clause – poisoned this matter from the outset, and vacate the indictment, plea agreement, and sentence. (Mem. in Supp. of Mot. to Vacate 1-4, ECF No. 74-3; Pet'r's Suppl. Mem. 1-5, ECF No. 113.) Accordingly, the threshold issue for this Court to determine is when the statutory maximum

sentences prescribed by the Sarbanes-Oxley Act were applied to the disadvantage of Bartoli thereby violating of the Ex Post Fact Clause of the United States Constitution.

1. *Indictment, Extradition, and Arraignment*

Bartoli claims that the initial violation of the Ex Post Facto Clause occurred in his indictment where "count 2 used a flawed statutory maximum." (Mem. in Supp. of Mot. to Vacate 2, ECF No. 74-3. *See also* Pet'r's Suppl. Mem. 3, ECF No. 113 (citing the criminal designation form rather than the indictment).) However, Count 2 of the indictment does not mention any statutory penalties whatsoever. (Indictment 12-18, ECF No. 2.) In fact, potential penalties, statutory or otherwise, are not recited anywhere within the indictment. (*Id.* at 1-54.) Therefore, the statutory maximum sentences prescribed by the Sarbanes-Oxley Act were not applied to Bartoli's indictment to his disadvantage.[3] The indictment does not violate the Ex Post Facto Clause. Bartoli's request to vacate the indictment for this reason is denied.

Bartoli next argues that violations of the Ex Post Facto Clause occurred in the petition for his extradition from Peru to the United States – arguing again that Count 2 of the indictment recited the incorrect statutory maximum penalty and asserting "[i]n the petition for extradition, all parties acted on the incorrect assumption that the applicable statutory maximums for mail fraud and wire fraud were also 20 years (this was corrected after the fact)." (Mem. in Supp. of Mot. to Vacate 2, ECF No. 74-3; Pet'r's Suppl. Mem. 3, ECF No. 113.) Once again, the indictment did not recite any statutory penalties, let alone an incorrect one. In addition, Bartoli fails to provide any

---

[3] This precise argument was previously disposed of in the discussion of Bartoli's "constitutional question" regarding prosecutorial misconduct. The indictment does not recite any potential consequences of the indicted charges. The criminal designation form attached to the indictment does incorrectly recite that Count 2, the Securities Fraud Charge, carries a statutory maximum penalty of twenty years' imprisonment. (Criminal Designation Form 1, ECF No. 2-1.) However, as analyzed previously, this criminal designation form is only completed after a grand jury indicts. It is not information presented to the grand jury and, therefore, Bartoli cannot demonstrate disadvantage taking the form of prejudice with respect to a misstatement in what is, in effect, a cover sheet summarizing the charges by a grand jury.

evidentiary support to his bald assertions that the petition for his extradition recited incorrect statutory maximum sentences.

Even if the statutory maximum sentences prescribed by the Sarbanes-Oxley Act were provided in the petition for extradition, Bartoli has provided no evidence that they were applied to his disadvantage, aside from the conclusory statement that "all parties acted" upon the incorrect information. Notably, the Supreme Court of Peru's extradition opinion does not once mention the statutory penalties Bartoli faced in the United States, making clear that its decision to extradite Bartoli did not hinge upon any potential statutory penalties he faced. (Translated Supreme Court of Peru Extradition Op. 1-6, ECF No. 125-1.) Because the statutory maximum sentences prescribed by the Sarbanes-Oxley Act were not applied during Bartoli's extradition to his disadvantage, Bartoli's request that this Court find Ex Post Facto Clause violations occurred during extradition is denied.

Finally, Bartoli, in conclusory fashion, claims Ex Post Facto Clause violations occurred during his arraignment. (Mot. to Vacate 4, ECF No. 74; Mem. in Supp. of Mot. to Vacate 1, ECF No. 74-3; Pet'r's Suppl. Mem. 1, ECF No. 113.) However, statutory penalties were not mentioned or discussed at the arraignment hearing whatsoever. (*See* Tr. Arraignment Hr'g, ECF No. 65.) Therefore, because the statutory maximum sentences prescribed by the Sarbanes-Oxley Act were not applied at Bartoli's arraignment to his disadvantage, Bartoli's request that this Court find Ex Post Facto Clause violations occurred at his arraignment is denied.

In sum, the statutory maximum sentences prescribed by the Sarbanes-Oxley Act were not applied to the disadvantage of Bartoli in violation of the Ex Post Fact Clause of the United States Constitution at the time Bartoli was indicted, extradited, or arraigned. Accordingly, this Court will not engage in further analysis regarding the constitutional efficacy of Bartoli's counsel for failing

to raise Ex Post Facto Clause violation arguments during Bartoli's indictment, extradition, or arraignment because a failure to raise "wholly meritless claims cannot be ineffective assistance of counsel." *United States v. Martin*, 45 F. App'x 378, 381-82 (6th Cir. 2002).

### 2. *Plea Agreement*

Bartoli next argues that an Ex Post Facto Clause violation occurred when his plea agreement recited the statutory maximum sentences prescribed by the Sarbanes-Oxley Act for Count 2, the Securities Fraud Charge, Count 4, the Wire Fraud Charge, and Count 5, the Mail Fraud Charge, and his counsel was ineffective with respect to plea negotiations for failing to identify these flaws. (Mot. to Vacate 4, ECF No. 74; Mem. in Supp. of Mot. to Vacate 2, ECF No. 74-3; Pet'r's Suppl. Mem. 3, ECF No. 113.) There is no question that the statutory maximum sentence of twenty years each for the Securities Fraud Charge, the Mail Fraud Charge, and the Wire Fraud Charge prescribed by the Sarbanes-Oxley Act were recited in the written plea agreement and by this Court during the change of plea hearing, effectively applying the Sarbanes-Oxley Act to events that occurred prior to its enactment. (Plea Agreement 2-3, ECF No. 34; Tr. Change of Plea Hr'g 8:16-17, 9:6-7, 9:16-18, ECF No. 53.) The question, however, is whether the application disadvantaged Bartoli.

Although Bartoli does not clearly articulate any disadvantage he suffered from the misstatements in the written plea agreement, he does glancingly argue that because the plea agreement considered an "illegal sentence," he should be permitted to withdraw his guilty plea. (Pet'r's Reply 10, ECF No. 124. *See also* Pet'r's Suppl. Mem. 14-15, ECF No. 113.) The argument is more clearly stated in Bartoli's separately filed Motion to Withdraw Guilty Plea where he argues that the application of the Sarbanes-Oxley Act to the written plea agreement disadvantaged him

because the misstatements did not allow him to make a knowing or intelligent guilty plea. (Mot. to Withdraw Guilty Plea 1-2, ECF No. 128.)

The law is clear that a entering a guilty plea must be done voluntarily, knowingly, and intelligently "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Federal Rule of Criminal Procedure 11 also makes clear that before accepting a guilty plea, a court "must verify that 'the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged.'" *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (quoting *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005)).

Notably, Bartoli has not previously challenged the validity of his guilty plea, neither before this Court nor on appeal, and is only doing so now through collateral attack. This Court, therefore, will only withdraw his plea if the plain error standard is met. *United States v. Kennedy*, 493 F. App'x 615, 616 (6th Cir. 2012) (citing *United States v. Vonn*, 535 U.S. 55, 73-74 (2002)). *See also United States v. Hogg*, 723 F.3d 730, 738 (6th Cir. 2013) ("plain error review is avoided so long as a defendant raises a claim of Rule 11 error in the course of the district court proceedings and prior to sentencing"). To demonstrate plain error, Bartoli must "establish (1) an error (2) that was 'obvious or clear' and (3) 'affected [his] substantial rights'" and further establish that the error undermined "'the fairness, integrity, or public reputation of the judicial proceedings.'" *Kennedy*, 493 F. App'x at 616 (quoting *United States v. Houston*, 529 F.3d 742, 750 (6th Cir. 2008)).

*Kennedy* is instructive for determining whether Bartoli's guilty plea should be withdrawn. In *Kennedy*, the defendant was charged with conspiracy to commit an offense along with the underlying substantive offense. *Kennedy*, 493 F. App'x at 616. The parties and the district court

all believed, and the plea agreement reflected, that the defendant faced a maximum possible sentence of fifteen years for the underlying offense. *Id.* With this understanding, the defendant pled guilty. *Id.* However, all involved were mutually mistaken about the statutory maximum sentence – it was five years, not fifteen. *Id.* Although the Sixth Circuit Court of Appeals found that the defendant met the first two prongs of the plain error test, he failed to establish that the error affected his substantial rights because he failed to demonstrate that "but for the error, [he] would not have entered the plea." *Id.* (quoting *United States v. Dominquez Benitez*, 542 U.S. 74, 83 (2004) (internal quotation marks omitted)). The *Kennedy* court concluded "while [defendant] claims to want to withdraw his plea, he fails to maintain that he would not have pled guilty in the first place or even that he would not plea guilty today . . .. By definition, that means [defendant] cannot show the error made a difference to him." *Kennedy*, 493 F. App'x at 616 (citing *Dominquez Benitez*, 542 U.S. at 84-85). *See also Pitts v. United States*, 763 F.2d 197, 201 (6th Cir. 1985) (holding that "affirmative misstatements of the maximum possible sentence" may "invalidate a guilty plea" if the misstatement was material to the defendant's decision to plead guilty).

Much like *Kennedy*, the parties and this Court believed, as was reflected in the plea agreement, that Bartoli faced a maximum sentence of twenty years each for the Securities Fraud Charge, the Wire Fraud Charge, and the Mail Fraud Charge. With this understanding, Bartoli pled guilty. However, all involved were mutually mistaken, as Bartoli only faced a maximum sentence of ten years for the Securities Fraud Charge and five years each for the Wire Fraud Charge and the Mail Fraud Charge. Therefore, Bartoli has met the first two prongs of the plain error test – an error occurred, and it was obvious or clear. However, Bartoli cannot establish that this error affected his substantial rights because he has not demonstrated, or even argued, that but for the error he would

not have entered his guilty plea. He fails to even advance the argument that if this Court withdraws his guilty plea, he would not plead guilty today and instead would insist on trial.

Instead, Bartoli claims he was mischarged. (Mem. in Supp. of Mot. to Vacate 2, ECF No. 74-3; Pet'r's Suppl. Mem. 4-5, ECF No. 113.) For the first time, Bartoli claims innocence with respect to violating 15 U.S.C. § 78ff(a) and, interestingly, asserts he is instead guilty of violating 15 U.S.C. § 78ff(c) and should have been charged appropriately. (Mem. in Supp. of Mot. to Vacate 2, ECF No. 74-3; Pet'r's Suppl. Mem. 4-5, ECF No. 113.) Bartoli makes this argument because, as applied to Bartoli's criminal conduct between 1995 and 1999, 15 U.S.C. § 78ff(c) carried a statutory maximum sentence of five years. *See* Omnibus Trade and Competitiveness Act of 1988, 100 Pub. L. 418, § 5003, 102 Stat. 1107, 1419 (1988). Bartoli argues that had he "known at the time that the maximum sentences for counts two, four, and five were five years each; he would have never signed a plea agreement and would have proceeded to trial." (Pet'r's Reply 8, ECF No. 124.) This argument entirely fails to address the actual charges Bartoli faced – namely, violations of 15 U.S.C. § 78ff(a), not 15 U.S.C. § 78ff(c). Bartoli's assertion that he would not have pled guilty had he faced five-year statutory maximum penalties is not enough to demonstrate that but for the error contained in the plea agreement he would not have pled guilty – especially given Bartoli did not face only five-year statutory maximum penalties.

This Court will not entertain Bartoli's hypothetical further except to address Bartoli's sudden claim of innocence and tangential argument that this Court failed to determine the factual basis for his plea. (Mem. in Supp. of Mot. to Vacate 2, ECF No. 74-3; Pet'r's Suppl. Mem. 5, ECF No. 113.) Despite Bartoli's recent post-sentencing assertions that he is innocent of violating 15 U.S.C. § 78ff(a), Bartoli's sworn statements to this Court "carry a strong presumption of truthfulness." *United States v. Rennick*, 219 F. App'x 486, 489 (6th Cir. 2007) (citing *Blackledge v. Allison*, 431

U.S. 63, 74 (1977)). The record is clear – Bartoli admitted to this Court, under oath, that he reviewed the indictment, understood the charges against him along with their legal elements, engaged in the illegal conduct supporting the charges against him as recited in the plea agreement, and pled guilty to the charges against him, which necessarily included 15 U.S.C. § 77ff(a). (Tr. Change of Plea Hr'g 4:14-20, 13:12-23, 44:11-46:16, ECF No. 53.) Bartoli's "post plea claims of innocence mock his courtroom declarations of guilt under oath." *United States v. Goodloe*, 393 F. App'x 250, 255 (6th Cir. 2010) (quoting *United States v. Mise*, 27 F. App'x 408, 414 (6th Cir. 2001) (internal quotation marks omitted)). Bartoli's newfound claims of innocence, that he was mischarged, and that this Court failed to determine the factual basis for his plea are meritless.

In sum, this Court finds that Bartoli has not demonstrated that but for the errors misstating the statutory maximum sentences in the written plea agreement, he would not have pled guilty. This necessarily leads to the conclusion that Bartoli has not demonstrated that the errors affected his substantial rights. Therefore, the plain error standard for determining whether Bartoli's guilty plea should be withdrawn has not been met – this Court's determination that Bartoli's guilty plea was entered voluntarily, knowingly, and intelligently stands. Given this determination, Bartoli has failed to demonstrate that the application of the Sarbanes-Oxley Act to his plea agreement disadvantaged him, leading to the conclusion that an Ex Post Facto violation did not occur when Bartoli pled guilty and this Court accepted his guilty plea and the written plea agreement.

This Court will note that Bartoli's umbrella argument is that his counsel was ineffective for failing to recognize the incorrect statutory maximum sentences recited in his plea agreement. (Mot. to Vacate 4, ECF No. 74. *See also* Mem. in Supp. of Mot. to Vacate 1-4, ECF No. 74-3; Pet'r's Suppl. Mem. 1-5, ECF No. 113.) Successful ineffective assistance of counsel claims must prove two components. First, Bartoli "must show that counsel's performance was deficient," which

"requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, Bartoli "must show that the deficient performance prejudiced" him. *Id.* Both components must be proved, otherwise it cannot be stated that there was a "breakdown in the adversary process that renders the result unreliable." *Id.*

For the first component, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* Therefore, to be deemed deficient, counsel's representation of Bartoli must have fallen below an "objective standard of reasonableness." *Id.* at 688. In other words, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*

For the second component, where Bartoli must demonstrate that counsel's deficient performance prejudiced him, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Therefore, Bartoli must do more than simply show that his counsel's "errors had some conceivable effect on the outcome of the proceeding" because then "[v]irtually every act or omission of counsel would meet that test . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Bartoli is required to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Undeniably, "[t]he constitutional right to counsel 'extends to the plea-bargaining process.'" *Ugochukwu v. United States*, No. 17-3073, 2018 U.S. App. LEXIS 10756, at *3 (6th Cir. Apr. 26,

2018) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)). Given the above defined standards, to succeed on his ineffective assistance of counsel claim Bartoli must demonstrate that his counsel's performance during the plea-bargaining process and while he entered his guilty plea was objectively, professionally unreasonable ***and*** that there is a reasonable probability that but for his counsel's objectively, professionally unreasonable performance, he would not have entered a guilty plea. *See id.* (quoting *Lafler*, 566 U.S. at 163, which states that a "'defendant must show [that] the outcome of the plea process would have been different with competent advice'"). *See also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (explaining that in the context of a guilty plea, for the prejudice prong of an ineffective assistance of counsel claim, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial").

Even without analysis of the first prong of the test, it is clear Bartoli cannot prevail as he cannot demonstrate but for his counsel's performance he would not have entered a guilty plea. For all the reasons previously articulated and thoroughly discussed, Bartoli fails to unequivocally assert, or even adequately demonstrate, that had the written plea agreement recited the correct statutory maximum sentences, he would not have pled guilty and instead would have insisted on going to trial.

In sum, although the record is clear that the plea agreement and the discussion held at the change of plea hearing reflect a mutual misunderstanding by Bartoli's counsel, the government's counsel, and this Court that Bartoli was subject to a statutory maximum sentence of twenty years each for the Securities Fraud Charge, the Wire Fraud Charge, and the Mail Fraud Charge, Bartoli fails to adequately argue that he would not have pled guilty had the correct information been supplied to him. Because Bartoli does not establish that but for the error he would not have pled

guilty, Bartoli cannot establish either ineffective assistance of counsel or that the application of the Sarbanes-Oxley Act to his plea agreement disadvantaged him in violation of the Ex Post Facto Clause. Bartoli's guilty plea stands – Bartoli's motion to withdraw his guilty plea is therefore denied as is Bartoli's request that his plea agreement be vacated.

      3.  *Sentencing*

Bartoli's final argument is with respect to the sentences imposed by this Court. (Mot. to Vacate 4, ECF No. 74. *See also* Mem. in Supp. of Mot. to Vacate 1-4, ECF No. 74-3; Pet'r's Suppl. Mem. 1-5, ECF No. 113.) Bartoli claims that an Ex Post Facto Clause violation occurred when he was sentenced to twenty years each, to run concurrently, for the Securities Fraud Charge, the Wire Fraud Charge, and the Mail Fraud Charge and his counsel was ineffective for failing to identify and object to this violation. (Mot. to Vacate 4, ECF No. 74; Mem. in Supp. of Mot. to Vacate 2, ECF No. 74-3; Pet'r's Suppl. Mem. 3, ECF No. 113.)

Once again, Bartoli's criminal conduct occurred between 1995 and 1999. Under the statutes in effect at that time, Bartoli faced a ten-year statutory maximum sentence for the Securities Fraud Charge and a five-year statutory maximum sentence each for the Wire Fraud Charge and the Mail Fraud Charge. There is no question that the statutory maximum sentences of twenty years each for the Securities Fraud Charge, the Wire Fraud Charge, and the Mail Fraud Charge prescribed by the Sarbanes-Oxley Act were applied at Bartoli's sentencing. (J. 3, ECF No. 44.) Accordingly, the Sarbanes-Oxley Act was applied to events that occurred prior to its enactment. There is also no question that the application disadvantaged Bartoli as he was sentenced to a statutory maximum penalty for each count that was longer than that which he actually faced.

Although inadvertent, it is clear the Ex Post Facto Clause was violated as the current law was applied to events that occurred prior to its enactment and Bartoli was disadvantaged. As this Court

previously vacated Bartoli's sentence due to this violation, the proper remedy has already been awarded Bartoli. No further discussion is necessary except to reiterate that Bartoli's request to vacate his sentence due to violations of the Ex Post Facto Clause is granted.

### E. Ground Four – Ineffective Assistance of Counsel During Sentencing

The fourth ground for relief of Bartoli's Motion to Vacate asserts that his counsel was ineffective during sentencing for: (1) failing to identify and object to breaches of the plea agreement – including the failure of both government's counsel and defense counsel to ask for a sentence within the advisory sentence guideline range; (2) failing to object to the inclusion and consideration of victim impact letters; (3) failing to object to this Court's comments regarding Bartoli's co-conspirators; and (4) failing to object to the sentence imposed by this Court. (Mot. to Vacate 8, ECF No. 74; Mem. in Supp. of Mot. to Vacate 16-18, ECF No. 74-3; Pet'r's Suppl. Mem. 12-18, ECF No. 113.) Because these allegations only involve conduct at Bartoli's sentencing, even if this Court were to find Bartoli's counsel was ineffective through analysis, Bartoli's sentence has already been vacated – there is no other relief this Court could grant. Therefore, this Court need not engage in said analysis for Bartoli's arguments as this entire ground for relief is rendered moot by the rulings of this Court.

### F. Miscellaneous Motion Practice

Currently pending before this Court, in addition to Bartoli's Motion to Vacate, is a Second Motion for Reconsideration and a Second Motion for Judicial Notice. (Second Mot. for Recons., ECF No. 98; Second Mot. for Judicial Notice, ECF No. 127.) These pending motions request that this Court make findings of fact and conclusions of law with respect to Bartoli's Motion to Vacate as well as take judicial notice that the government engaged in extreme and outrageous conduct warranting the dismissal of this case entirely. (Second Mot. for Recons., ECF No. 98; Second Mot.

for Judicial Notice, ECF No. 127.) However, these motions do not provide additional legal arguments based in established, properly supported evidence. Instead, these arguments just rehash arguments Bartoli has already made, just under different title. This Court has fully analyzed every argument and factual assertion Bartoli reiterates in these motions within this Memorandum of Opinion and Order. Therefore, these pending motions are denied.

## IV. CONCLUSION

This Memorandum is, in sum and substance, a recitation and disposition of every single post-conviction issue Bartoli has brought before this Court. Despite Bartoli's attempts to classify every single layer of this case as poisoned, neither the facts nor the law, support this contention. Neither Bartoli's indictment, extradition, plea agreement, nor guilty plea suffer from the taint Bartoli believes they do. Bartoli's conviction, unequivocally, stands.

The only constitutional violation Bartoli endured was that of the Ex Post Facto Clause when this Court unintentionally, yet improperly, utilized the statutory maximum sentence of twenty years for Count 2, the Securities Fraud Charge, Count 4, the Wire Fraud Charge, and Count 5, the Mail Fraud Charge, at Bartoli's sentencing. Because this is the only portion in the entirety of Bartoli's case before this Court that is blemished, this is the only portion that is vacated.

For concision, clarity, and all the reasons detailed throughout this Memorandum, with respect to Petitioner Eric V. Bartoli's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence: (1) Bartoli's first ground for relief is GRANTED IN PART and DENIED IN PART – this Court hereby VACATES **only** Bartoli's **sentence**; (2) Bartoli's second, third, and fifth grounds for relief are DENIED; (3) Bartoli's fourth ground for relief is DENIED AS MOOT. (Mot. to Vacate, ECF No. 74.) In addition, this Order substantively resolves the pending Motion for Reconsideration, Motion for Judicial Notice, and Motion to Withdraw Guilty Plea, and all are

DENIED as such. (Second Mot. for Recons., ECF No. 98; Second Mot. for Judicial Notice, ECF No. 127; Mot. to Withdraw Guilty Plea, ECF No. 128.) Bartoli's multiple requests that the entirety of this matter be dismissed with prejudice are DENIED. (*See* Mot. to Vacate 12, ECF No. 74; Pet'r's Suppl. Mem. 23, ECF No. 113; Pet'r's Reply 3-5, ECF No. 124.)   Bartoli will be resentenced by this Court.

Finally, this Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith and there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

DATE: January 3, 2021                          /s/ John R.
                                                             Judge John R. Adams
Adams                                                UNITED STATES DISTRICT COURT